UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br>    Plaintiff,<br><br>  v.<br><br>MAD FINANCIAL, INC., AKA MEYERS, ARNOLD, AND DAVIDSON, FINANCIAL, INC., CTU, INC., AKA COOPER, THOMAS, AND UNGAR, INC., AND MICHAEL A. DIPPOLITO,<br><br>    Defendants. | CIVIL ACTION NO. 02-60239-CIV-HURLEY<br><br>NIGHT BOX<br>FILED<br>JUL    200_<br><br>CLERK, USDC / SDFL / WPB |

### CONSENT SUPPLEMENTAL ORDER CONCERNING CIVIL MONETARY PENALTY AGAINST DEFENDANTS MAD FINANCIAL, INC., CTU, INC., AND MICHAEL A. DIPPOLITO

  1. On February 20, 2002, Plaintiff Commodity Futures Trading Commission ("the Commission") filed a complaint against Defendants MAD Financial ("MAD"), CTU Inc., ("CTU") and Michael Dippolito ("Dippolito") (collectively, the "Defendants") seeking injunctive and other equitable relief, as well as the imposition of restitution and civil monetary penalties, for violations of the Commodity Exchange Act, as amended ("Act"), 7. U.S.C. §§ 1 *et seq.* (2000), and the Commission Regulations promulgated thereunder ("Regulations"), 17 C.F.R. §§ 1 *et seq.* (2000). On February 20, 2002, the Court issued an *ex parte* statutory restraining order that, among other things, froze all assets belonging to or related to the Defendants, and ordered the maintenance of and access to business records.

2.	On May 7, 2002, District Judge Daniel T. K. Hurley entered a Default Judgment for Permanent Injunction and Other Ancillary Relief against defendants ordering defendants to pay $229,615.51 in restitution, disgorge all benefits obtained and conduct an evidentiary hearing to determine an amount of a Civil Monetary Penalty ("CMP").

## I.

## CONSENTS AND AGREEMENTS

3.	To effect resolution of the CMP without any further judicial proceedings, Defendants consent to the entry of this Supplemental Order.

4.	Defendants admit that this Court has jurisdiction over them and the subject matter of this action.

5.	Defendants admit that venue properly lies with this Court pursuant to Section 6c of the Act, 7 U.S.C. §13a-1.

6.	In addition, Defendants waive: (a) all claims which they may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (2000) and 28 U.S.C. § 2412 (2000), as amended by Pub. L. No. 104-121, §§ 231-32, 110 Stat. 862-63, and Part 148 of the Commission's Regulations, 17 C.F.R. §§ 148.1 *et seq.*, to seek costs, fees and other expenses relating to, or arising from, this action; (b) the entry of findings of fact and conclusions of law in this action as provided by Rule 52 of the Federal Rules of Civil Procedure, except as provided below in Section II; (c) any claim of Double Jeopardy based upon the institution of this proceeding or the entry in this proceeding of any order imposing a civil monetary penalty or any other relief; and (d) all rights of appeal from this Order.

7.	A judgment was entered against Defendants on May 7, 2002, adopting the allegations contained in the complaint. Defendants agree that the allegations in the Complaint

and all of the findings of fact made by this Court in the Default Judgment Order are taken as true and correct and shall be given preclusive effect without further proof for the purpose of any subsequent bankruptcy proceeding filed by, on behalf of, or against Defendants for the purpose of determining whether their restitution obligation, civil monetary penalty and/or other payments ordered herein are excepted from discharge. Defendants also shall provide immediate notice of any bankruptcy filed by, on behalf of, or against them in the manner required by this Supplemental Order.

8. Defendants agree to relinquish any right, title, interest or privilege they may possess in any of the assets frozen by this Court, including funds in trading and banking accounts.

9. Defendants agree that neither they nor any of their agents, servants, employees, contractors or attorneys shall take any action or make any public statement denying, directly or indirectly, any allegation in the Complaint or findings or conclusions in this Supplemental Order or creating, or tending to create, the impression that the Complaint, the Default Judgment Order or this Supplemental Order is without a factual basis; provided, however, that nothing in this provision shall affect Defendants' (a) testimonial obligations; or (b) right to take legal positions in other proceedings to which the Commission is not a party. Defendants shall take all necessary steps to ensure that all of their agents, servants, employees, contractors and attorneys understand and comply with this agreement.

10. Defendants agree that they have read this Supplemental Order and agree to this Supplemental Order voluntarily and that no promise or threat has been made by the Commission or any member, officer, agent or representative thereof, or by any other person, to induce consent to this Supplemental Order, other than as set forth specifically herein.

11.     Defendants consent to the continued jurisdiction of this Court in order to implement and carry out the terms of all orders and decrees that may be entered herein, to entertain any suitable application or motion for additional relief within the jurisdiction of this Court, and to assure compliance with this Supplemental Order.

12.     The Court, being fully advised in the premises, finds that there is good cause for the entry of this Supplemental Order and that there is no just reason for delay. The Court therefore directs the entry of equitable relief, pursuant to § 6c of the Act, 7 U.S.C. § 13a-1 as set forth herein.

## II.

## FINDINGS OF FACT

**A.      General**

13.     This Court has jurisdiction over the subject matter of this action and all parties hereto pursuant to Section 6c of the Act, as amended, 7 U.S.C. § 13a-1 (2002), which authorizes the Commission to seek injunctive relief against any person whenever it shall appear that such person has engaged, is engaging or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation or order thereunder.

14.     Venue properly lies with this Court pursuant to Section 6c of the Act, as amended, 7 U.S.C. § 13a-1.

15.     This Court has personal jurisdiction over the Defendants, each of whom has acknowledged service of the Complaint and consented to the Court's jurisdiction over each of them.

16.     This Court retains jurisdiction over each of them for the purpose of enforcing the terms of the Consent Order of Permanent Injunction and this Supplemental Order.

17. Defendants shall not retain any right, title, interest or privilege in any of the assets frozen by this Court, including funds in trading and bank accounts.

18. There is good cause for entry of an order requiring Defendants to pay a civil monetary penalty in an amount of $229,615.51, which is equal to the amount defrauded from customers and minus any funds returned to customers or funds frozen.

**B.   Parties**

19. Plaintiff Commodity Futures Trading Commission is an independent federal regulatory agency charged with the responsibility for administering and enforcing the provisions of the Act and Regulations promulgated under it.

20. Michael Dippolito, is an individual residing in Boca Raton, Florida, 33480. Dippolito has never been registered with the Commission in any capacity. Dippolito was the sole owner of MAD Financial, Inc. ("MAD") and Cooper, Thomas and Ungar, Inc. ("CTU") and also personally solicited customers to invest with MAD and CTU. On the MAD and CTU incorporation documents, filed in the state of Florida, Dippolito is listed as the registered agent and sole director of both corporations.

**C.   Factual Background**

21. Since at least April 2001 through January 2002, defendants cold-called customers claiming they would realize extraordinary profits immediately by investing in pre-purchased foreign currency option contracts, specifically in the Yen, the Pound and the Euro. These claims generally fell within two categories: 1) the option contracts had already appreciated in value, but defendants would sell them to the customer at the original purchase price, and 2) the contracts were poised to move dramatically in value due to market conditions.

22.     Defendants attempted to create a sense of urgency to pressure customers into investing immediately. Customers were urged to send money quickly before this allegedly promising, but fleeting, opportunity passed them by. Customers were told that the value of the contracts had increased dramatically and they could lock in a profit if they invested immediately. Customers who initially declined to invest were subsequently informed in follow-up calls of the huge profits missed and were "pitched" again to invest. Underscoring the time sensitivity of the investment, customers were faxed detailed wiring instructions and told to wire their funds to the firm's bank account. After making a purchase, customers were encouraged to hold the option contracts open because the value was guaranteed to increase.

23.     Defendants significantly downplayed the risk of loss in trading foreign currency options through claims that the market conditions would have a positive effect on prices, statements about trading techniques as a way to limit loss, and claims that they have insider knowledge. Defendants failed to explain to customers verbally or in printed material that a risk involved with trading foreign currency option is that the customer could lose his entire investment. Defendants emphasized that the investment was risk free and the customer would make a guaranteed profit immediately on the initial investment since the value of the pre-purchased block of options had already increased. If any warning of risk was given, it was only mentioned in passing and coupled with misleading statements about profitability.

24.     Defendants failed to send initial or periodic account statements. Instead, customers received only the "Account Summary" or "Preliminary Confirmation" documents and wiring instructions that were faxed to customers within minutes of deciding to invest, or prior to investing. The "Account Summary" and "Preliminary Confirmation" documents do not show from whom the foreign currency options were supposedly being purchased. While some

customers were verbally informed that the option contracts were traded in the "foreign exchange market," written confirmation of their activity was not provided. In fact, some customers never received any account documentation at all.

25.     Investing customers were instructed to and did wire their funds to the corporate Defendants' bank account at First Union National Bank in Jacksonville Florida. No purchase of options on futures contracts for foreign currency was made; rather defendant misappropriated the funds of unsuspecting customers. The only disbursements of funds from the accounts were used by defendant Dippolito to purchase cars, furniture, chat room time and other personal expenses. For example, defendant Dippolito, the only authorized signatory on the corporate accounts, paid out approximately $108,000, in checks to himself from the corporate accounts. Defendant Dippolito also used ATM machines to withdraw over $19,900, from the corporate accounts.

26.     Two customers, who were unable to wire money, were instructed to send a check via Federal Express to a "special payment address." The customers subsequently discovered that their checks, which were payable to CTU, were signed by defendant Dippolito and cashed at "Budmart," a local check cashing agency.

27.     Defendants called the customers to confirm receipt of their funds and to tell them that they allegedly made a profit. When the customer instructed defendants to wire the profits, invariably defendants claimed that there was a problem with the bank wire. Customers were told to wait and promised that the funds were on their way. Other times the defendant refused to wire the profits unless the customer invested additional funds. Ultimately, the customers never received their purported profits or their initial investments and were never contacted again. Customers' attempts to contact the Defendants went unanswered.

IV.

**CONCLUSIONS OF LAW**

28.     Defendants violated Section 4c(b) of the Commodity Exchange Act (the "Act"), 7 U.S.C. § 6c(b) ("Section 4c(b)"), and Commission Regulation 32.9, 17 C.F.R. §32.9, by making materially false representations concerning the likelihood that customers will profit from purchasing foreign currency options from defendants, and by making false representations and material omissions concerning the risk of loss.

29.     Defendants violated Section 4c(b) of the Act , and Commission regulation 32.9, 17 C.F.R. §32.9 by misappropriating customer funds for personal expenses.

30.     Defendants violated Section 4c(b) of the Act and Commission Regulations 32.11 and 33.3(a) thereunder, 17 C.F.R. §§32.11 and 33.3(a), since the options sold by defendants were not consummated on or subject to the rules of a contract market or a derivatives transaction execution facility designated by the Commodity Futures Trading Commission.

31.     Defendants have also violated Section 4c(b) of the Act and Commission Regulation 32.5, 17 C.F.R. §32.5, by failing to provide prospective customers with a disclosure document containing such key required information as the duration of the option, a list of elements comprising the purchase price, a description of all costs that may be incurred if the option is exercised, and an explanation concerning the necessary fall or rise in the price of the contract underlying the option in order for the customer to profit.

V.

**DEFENDANTS TO PAY A CIVIL MONETARY PENALTY**

32.     Following fulfillment of Defendants' restitution obligation under this Court's Default Judgment for Permanent Injunction and Other Ancillary Relief dated May 7, 2002,

Defendants shall pay a civil monetary penalty in the amount of $229,615.51. Defendants are jointly and severally liable for the payment of the civil monetary penalty.

33. Upon the entry of this Supplemental Order, the provisions of the Court's February 20, 2002, Order freezing defendants assets shall no longer be in effect. Defendants and any financial institution holding such assets shall facilitate the payment of any such assets to the National Futures Association for distribution to customers as restitution.

34. Defendants shall not transfer or cause others to transfer funds or other property to the custody, possession, or control of any family member or any other person for the purpose of concealing such funds or property from the Court, the Commission.

35. If any provision of this Supplemental Order or the application of any provision or circumstance is held invalid, the remainder of this Supplemental Order, and the application of the provision to any other person or circumstance, shall not be affected by the holding.

36. Upon being served with copies of this Supplemental Order after entry by the Court, the defendants shall sign an acknowledgment of such service and serve such acknowledgment on the Commission within seven (7) calendar days.

37. This Court shall retain jurisdiction of this action in order to implement and carry out the terms of all orders and decrees that may be entered herein, to entertain any suitable application or motion for additional relief within the jurisdiction of this Court, and to assure compliance with this Supplemental Order.

## VI.

## MISCELLANEOUS PROVISIONS

38.     All notice required to be given by any provision in this Supplemental Order shall be sent by certified mail, return receipt requested, as follows:

Notice to the Commission:

Karon J. Powell, Esq.
Division of Enforcement
Three Lafayette Centre
1155 21st St. N.W.
Washington, D.C. 20581


Notice to the Defendants:

Michael A. Dippolito
9872 Grand Verde Way,
Apt. 1402
Boca Raton, Florida, 33428

39. In the event that any of the defendants change their residential or business telephone number(s) and/or address(es) at any time, they shall provide written notice of the new number(s) and/or address(es) to the Monitor and to the Commission within ten calendar days thereof.

**SO ORDERED**, this _____ day of _____, 2004, at _____, FL.

_____
Daniel T. K. Hurley
UNITED STATES DISTRICT JUDGE

For Defendants:

_____    Date: 6/17/04
Michael A. Dippolito
9872 Grand Verde Way,
Apt. 1402
Boca Raton, Florida, 33428


For Plaintiff Commodity Futures Trading Commission:

_____    Date: 7·7·04
Karen J. Powell
Trial Attorney
Division of Enforcement
Three Lafayette Centre
1155 21st St. N.W.
Washington, D.C. 20581

11